IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**TARA ECKLER**
5106 Harvestdale Drive
Mason, Ohio 45040

    Plaintiff,

vs.

**PFIZER, INC.**
235 East 42nd Street
New York, New York 10017

and

**GLAXOSMITHKLINE, INC.**
5 Moore Drive
Research Triangle Park, North Carolina 27709

    Defendants.

Case No. 3:20-cv-492

**COMPLAINT WITH JURY DEMAND**

---

Now comes Plaintiff Tara Eckler ("Eckler") by her attorney and for her Complaint against Defendants Pfizer Inc. and GlaxoSmithKline Inc. hereinafter referred to as "Defendants" states and avers as following:

## I.    PARTIES, JURISDICTION & VENUE

1. This is an action for wrongful discharge predicated on violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §1201, et seq and the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq and Ohio Revised Code Sections 4112.02 and 4112.99.

2. Plaintiff is a resident of the state of Ohio and a former employee of Pfizer Inc. ("Pfizer") and GlaxoSmithKline ("GSK").

3. Defendant Pfizer is a New York corporation and the former employer of Plaintiff.

4. Defendant GlaxoSmithKline ("GSK") is a corporation registered in England and Wales and the former employer of Plaintiff pursuant to a joint venture with Defendant Pfizer.

5. This Court has subject matter jurisdiction of the Complaint pursuant to 42 U.S.C. §1201 et seq. the Americans with Disabilities Act and 29 U.S.C. §2601 et seq. The Family and Medical Leave Act, and has pendent jurisdiction over Plaintiff's state law claims.

6. Venue properly lies within the Southern District Court of Ohio pursuant to 28 U.S.C. §1391 (c)(2) and 28 U.S.C. §1391 (c)(3) because both Defendants conduct business in this judicial district and because Defendant GSK is a non-resident of the United States.

7. On or about May 4, 2020 Plaintiff filed an EEOC charge with the Equal Employment Opportunity Commission alleging disability discrimination.

8. Subsequently on September 10, 2020 the Equal Employment Opportunity Commission issued a Dismissal and Notice of Right to Sue which was received by Plaintiff on September 14, 2020. A copy of the Dismissal and Notice of Rights ("Notices") is attached hereto as Exhibit A.

9. The Notice provided that Plaintiff had the right to file a civil action in an appropriate United States District Court within 90 days of receipt of the Notice. This action is being brought within 90 days of Plaintiff's receipt of the Notice.

## II. FACTUAL BACKGROUND

10. Plaintiff restates the allegations of paragraph 1-9 herein.

11. Plaintiff began employment with Defendant Pfizer, Inc. ("Pfizer") on October 10, 2016 at an office located in Cincinnati, Ohio. At the time of her termination Plaintiff was employed as a Senior Manager, Shopping Marketing (Walmart and Krogers). Plaintiff was terminated by Defendant Pfizer with an effective date of July 29, 2020.

2

12. Plaintiff's principal job responsibilities included:

    A. Leading all aspects of shopper marketing programs in store and on-line for Krogers and Walgreens retain operations, including:

- Strategy (with Brand and Retailer).
- Tactical development and execution (eg. in-store signage and displays, sampling events, digital banner ads, emails, etc.).
- Creative management with internal and external agency partners.
- Vendor/Supplier management, pricing negotiations and program set-up.
- New item sell-in support to Retailer.
- Managed all coupon/discount strategy and execution (funding, set-up, etc.) beyond Trade pricing. For Kroger, this included making recommendation on a multi-million dollar annual coupon distribution agreement.
- Budget management and invoice processing- managed $8-10 MM annually.

    B. Leading strategic partnerships with external Companies/Brands (eg. Kimberly Clark, J&J, Bayer).

    C. Managing eCommerce negotiations including product assortment, pricing and item setup.

    D. Managing Retailer digital & media teams (84.51- Kroger, Walgreens Digital) including price negotiations, program set-up and inclusion in value-added opportunities.

    E. Working on miscellaneous Brand/Company programs as needed.

13. On or about August 1, 2019 Defendant Pfizer and GSK closed on a joint venture. As a result many Pfizer employees then became employees of the joint venture. Had Plaintiff not have been terminated, she would have become an employee of the Pfizer-GSK joint venture, effective August 1, 2019 and would have been entitled to certain additional compensation and benefits associated with the joint venture, including but not limited to the immediate vesting of her 401-K and Long Term Incentive Plan and becoming bonus eligible.

14. During her employment with Defendant Pfizer, Plaintiff performed in an exceptional manner and did not receive any disciplinary or corrective action and no concerns about her performance were ever expressed, until an internal corporate investigation, which upon information and belief started in April 2019.

15. Throughout her employment with Defendant Pfizer, Plaintiff suffered from disabilities, including but not limited to severe endometriosis/fibrosis cysts, a pituitary adenoma that triggers migraines and vision loss as well as fibromyalgia. These conditions are chronic and ongoing.

16. Plaintiff timely notified Defendant Pfizer, including her manager about the nature and extent of her disabilities.

17. Upon information and belief, in April 2019, an individual known as Arthur Whiting and alleged to be the Director of Accounting for Valassis Digital/Maxpoint Interactive ("Valassis"), a Pfizer vendor, called Pfizer and made some allegations that Plaintiff may have attempted to deposit a Pfizer check in the amount of $8750.00 arising out of a Valassis overpayment into a personal bank account. It was later discovered that Mr. Whiting was not actually an employee of Valassis, but rather was only a contractor involved with the sale/joint venture between Maxpoint and Valassis, and has since been terminated.

18. Valassis had an occasion provided digital advertising and coupons for Pfizer in respect to Pfizer products placed in Kroger retail operations throughout Southwest Ohio.

19. On or about May 17, 2019 Plaintiff was interviewed by the Pfizer Compliance Department, regarding Whiting's allegations and three days later Pfizer allegedly closed the investigation.

20. On June 26, 2019 Plaintiff had surgery for one of her disabilities and was then required to be off on medical leave, as the surgery was significantly more complicated than originally

4

contemplated by her surgeon. The physician further advised Plaintiff that she should, post surgery, take an additional two-four weeks off (at a minimum) before returning to work. However, due to Plaintiff's concerns about how her medical issues could impact her ability to remain employed following the joint venture, she returned to work in only two days following her surgery.

21. Following the surgery and Plaintiff's return to work, it became necessary for Plaintiff to take additional medical leave due to problems experienced during surgery, for her disabilities and for a previously approved FMLA condition and so she notified Defendant Pfizer of same on July 15, 2019. Shortly after this notification, Plaintiff was contacted again by Defendants Compliance Team on the same day July 15, 2019 regarding the $8750.00 check and advised that the investigation was being reopened.

22. When Plaintiff was notified on July 15, 2019, it was nearly two months after the initial investigation had concluded and been closed on May 20, 2019, but just after she had notified Pfizer of her need to take additional FMLA leave associated with her disabilities and the June 2019 surgery.

23. Plaintiff previously and during a trip to the Pfizer Consumer Office in New Jersey, on or about May 21, 2019, talked with Jennifer Holahan and other Pfizer employees about a possible need to take 2-4 weeks family medical leave following a needed medical surgery related to severe and invasive endometriosis that would occur in June 2019. Defendant's Consumer Office was not very receptive to Plaintiff's request for leave and indicated that the taking of leave just prior to the closing of the joint venture with Defendant GSK might not be a good idea. However, from Plaintiff's perspective her pain had become unbearable and delaying the surgery further was not an option.

24. Therefore, on May 29, 2019 Plaintiff contacted Pfizer's Disability Office to inquire about the need to take 2-4 weeks of medical leave following her surgery in June 2019, although the exact date had not been scheduled at that time. Plaintiff then recontacted Jennifer Holahan again about her upcoming surgery and once again Defendant indicated that taking time off was not ideal.

25. Despite Plaintiff's June 2019 surgery being more extended and complicated than originally intended, and despite Plaintiff's doctor recommending that at a minimum, she take two to four weeks off following surgery, she only took two days, due to the previously mentioned concerns expressed by Defendant Pfizer about being absent at the time of the joint venture.

26. Notwithstanding and as previously indicated due to post surgery complications (related to reduced functional capacity and ongoing and severe pain as a result of the June 26, 2019 surgery) Plaintiff was forced to move forward with an additional medical leave request, which in turn prompted Defendant Pfizer to reopen the check investigation, which had been closed two months earlier. Then approximately one week later Plaintiff reached out again to Pfizer's Disability Office to confirm a leave start date for late July 2019. Also, on July 23, 2019 Plaintiff notified Jennifer Holahan, her Kroger team lead Shannon Cox and other members of the Pfizer Kroger team, including Mike Molina, Ryan Diehl, Charles Holman and Amber Myer of her need to take additional medical leave. Plaintiff was scheduled to lead a Customer Meeting the next day July 24, 2019 and had a detailed conversation with Shannon Cox that she would be moving forward with that meeting.

27. Then on July 24, 2019 after hosting the customer meeting Plaintiff had a very detailed meeting with Jennifer Holahan where the details of her disability, the surgery and Plaintiff's current pain levels were discussed. Plaintiff advised Ms. Holahan that she still needed to wrap up

6

a few things, but intended to start her FMLA medical leave at some time, the next day, July 25, 2019. Plaintiff's leave was also then approved by Defendant Pfizer's human resources representative Kim LaBold. Plaintiff also advised Defendant's Compliance Office that she would be commencing her FMLA disability leave on July 25, 2019. On the same day Defendants reopened the investigation into the Valassis check.

28. On July 26, 2019 Plaintiff received a voicemail message from Pfizer Benefits advising Plaintiff that the paperwork related to her FMLA medical disability leave had been sent with an effective date of July 25, 2019. The actual paperwork was received by Plaintiff on July 27, 2019 and her employee statement was sent back on July 28, 2019. Pfizer's Disability Office advised Plaintiff that the required paperwork from her doctor's office needed to be sent within 15 days of July 25, 2019. Plaintiff's physician would later fax all the required medical paperwork to Pfizer on or about August 6, 2019.

29. On July 29, 2019 Defendants terminated Plaintiff's employment three days prior to the effective date of the joint venture with Defendant GSK.

30. Following her termination from Pfizer, Plaintiff on or about May 4, 2020 filed a disability discrimination charge with the Equal Employment Opportunity Commission's Office in Cincinnati Ohio.

31. In the collective response to Plaintiff's EEO charge Defendants Pfizer and GSK contended that Plaintiff was not terminated due to her disability and/or FMLA coverage but rather because Plaintiff had altered an invoice resulting in an overpayment to a Pfizer vendor, Valassis and then attempted to convert the alleged overpayment for Plaintiff's benefit. This was the first time that Plaintiff had learned of Defendants' concerns.

7

32. Plaintiff initially learned of a Pfizer internal investigation in respect to the overpayment on May 17, 2019 during an interview with Pfizer's Compliance Department. Plaintiff was not advised as to the nature of the investigation prior to May 17, 2019. The initial investigation had been closed on May 20, 2019 with no concerns registered by Defendant Pfizer as to any actions taken by Plaintiff.

33. During the EEOC investigation, but not before, Defendant claimed that an invoice associated with the overpayment was likely altered from Plaintiff's laptop. However, Defendant failed/refused to produce any forensic evidence supporting such an allegation, even after Plaintiff requested same.

34. During the May 17, 2019 interview, Defendant advised Plaintiff if she did not hear back from them in the next couple of weeks, she should consider the matter closed. No further contact was made by Defendant to Plaintiff until July 15, 2019 after Plaintiff had notified Defendant earlier that day about her need to take additional FMLA medical disability leave.

35. During the EEO investigation, Defendant stated that "someone attempted to deposit the (overpayment) check into a Bank of America account in Dallas Texas…" Plaintiff also had a Bank of America account but hers was located in Illinois, therefore Plaintiff could not have been the individual or entity responsible for attempting to convert these funds. Plaintiff's BOA account is a family account and was previously utilized as the account where Pfizer's direct deposit wage payments were made. In addition, a review of BOA's records failed to reveal any deposits in the amount of $8,750 into Plaintiff's account over the last 12 months.

36. Plaintiff was terminated by Defendant Pfizer due to her disabilities and taking approved FMLA leave, at a time when it was finalizing its joint venture agreement with Defendant GSK.

8

37. On July 29, 2019 Plaintiff was on FMLA leave and received numerous text messages and an unexpected call from her manager asking if Plaintiff could chat about her work and to ensure that things were in order when Plaintiff returned from leave. Plaintiff took the call sitting just outside her doctor's office. Plaintiff asked if the call could be conducted later that afternoon, but the manager persisted the call should happen then and Plaintiff acquiesced. The manager then advised Plaintiff that Human Resources was also on the line and that her job with Pfizer had been terminated effective immediately and that her medical benefits were also immediately terminated. Further, Plaintiff did not receive severance or other incentives associated with employees who were employed at the time the joint venture became effective.

### IV. CAUSES OF ACTION

#### A. DISABILITY DISCRIMINATION
Americans with Disabilities Act
42 U.S.C. §1201 et seq.

38. Plaintiff restates the allegations of paragraph 1-37 herein.

39. Plaintiff is a member of a class of persons protected from disability discrimination by the Americans With Disabilities Act of 1990, as amended.

40. During her employment with Defendants, Plaintiff was treated differently than comparable non-disabled employees, including but not limited to her eventual termination.

41. Plaintiff was terminated by Defendants so she would not receive the enhanced compensation and benefits related to the Defendants' joint venture, effective August 1, 2019.

42. Plaintiff was terminated by Defendant Pfizer in part because of her necessary absences from work for both surgery and recovery from same during the time period shortly before the effective date of the joint venture.

9

43. As a direct and proximate result of Defendants' unlawful actions Plaintiff has been damaged, at least in the form of lost pay, benefits, including compensation and benefits associated with the Defendants' joint venture and attorney fees.

44. Plaintiff has also suffered stress, anxiety, and emotional distress as a result of Defendants unlawful actions. Defendants' actions were malicious, willful and intentional warranting the imposition of punitive damages.

45. Defendant GSK has been included in this litigation, upon information and belief that it is obligated to defend employee claims of termination as a result of the joint venture, and because it participated in the decision to terminate Plaintiff.

## B. HANDICAP DISCRIMINATION
Ohio Revised Code Sections 4112.02 and 4112.99

46. Plaintiff restates the allegations of paragraph 1-45 herein.

47. Plaintiff is a member of a class of persons protected from handicap discrimination by Ohio Revised Code Sections 4112.02 and 4112.99. This Court has pendent jurisdiction to consider Plaintiff's closely related state claims.

48. During her employment with Defendants, Plaintiff was treated differently than comparable non-handicapped employees, including but not limited to her eventual termination.

49. Plaintiff was terminated by Defendants so she would not receive the enhanced compensation and benefits related to the Defendants' joint venture, effective August 1, 2019.

50. Plaintiff was terminated by Defendant Pfizer in part because of her necessary absences from work for both surgery and recovery from same during the time period shortly before the effective date of the joint venture.

51. As a direct and proximate result of Defendants' unlawful actions Plaintiff has been damaged, at least in the form of lost pay, benefits, including compensation and benefits associated with the Defendants joint venture and attorney fees.

52. Plaintiff has also suffered stress, anxiety, and emotional distress as a result of Defendants' unlawful actions. Defendants' actions were malicious, willful and intentional warranting the imposition of punitive damages.

### C. FMLA DISCRIMINATION
The Family and Medical Leave Act of 1993
29 U.S.C. §2601 eq seq.

53. Plaintiff restates the allegations of paragraph 1-52 herein.

54. Plaintiff is a member of a class of persons protected from employment discrimination, due to her serious health issues as further provided in the Family and Medical Leave Act of 1994.

55. At all relevant and material times Plaintiff was experiencing serious health issues as provided for in FMLA.

56. At the time of her July 29, 2019 termination, Plaintiff was on a Defendant Pfizer approved FMLA leave. As such Defendants' termination of Plaintiff violated the provisions of FMLA.

57. As a direct and proximate result of Defendants' unlawful actions Plaintiff has been damaged, at least in the form of lost pay, benefits, including compensation and benefits associated with the Defendants joint venture and attorney fees.

58. Plaintiff has also suffered stress, anxiety, and emotional distress as a result of Defendants unlawful actions. Defendants' actions were malicious, willful and intentional warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Tara Eckler respectfully demands judgment against Defendants Pfizer, Inc. and GlaxoSmithKline, Inc. and prays for the following relief:

A. Backpay and benefits, including those associated with the August 1, 2019 joint venture agreement; in excess of One Hundred Thousand Dollars ($100,000);

B. An award of punitive damages in excess of One Hundred Thousand Dollars ($100,000);

C. An award of compensatory damages in excess of One Hundred Thousand Dollars ($100,000); and

D. An award of reasonable attorney fees and costs incurred pursuant to all state and federal statutes, including statutory damages;

E. Prejudgment and post judgment interest;

F. For such other relief that this court deems just and equitable.

Respectfully submitted,

*/s/ David M. Duwel*
David M. Duwel (0029583)
Duwel Law
130 W. Second Street, Suite 2101
Dayton, Ohio 45402
Phone: (937)297-1154
Fax: (937)297-1152
Email: david@duwellaw.com

## JURY DEMAND

Plaintiff demands a trial by jury.

*/s/ David M. Duwel*

12